## Commonwealth v. Dunlap.

*John G. Love*, District Attorney, for Commonwealth.

*N. B. Spangler* and *Ivan Walker*, for defendant.

FLEMING, P. J., August 28, 1930.—This defendant seeks a new trial, having been convicted of perjury. At the trial, certain remarks of the district attorney, made in his closing address to the jury, were objected to, and a motion made to withdraw a juror, which motion was overruled.

It appears that the remarks objected to were, in substance, that the defendant had threatened the life of Ray Carson, the person concerned in the action wherein the alleged perjury was committed. There was nothing in evidence showing such to be a fact. We overruled the motion to withdraw a juror, believing at the time that there was a grave question as to whether the jury would be convinced beyond a reasonable doubt of the defendant's guilt, and that, in such manner, a retrial would be avoided. We did not fully consider at that time what effect such remarks might have in determining the issue. We cautioned the jury to disregard the remarks of the district attorney, but whether the jury actually did disregard the same no human agency can tell.

Remarks improperly put into the jury box are similar to words improperly written upon paper. An erasure may be attempted, which to all appearances may have been completely successful, but which continues to leave an invisible scar sufficient to prevent the writing from being a wholly perfect one. It is reasonable to suppose that a jury, considering whether or not a defendant has willfully and corruptly testified falsely in a judicial proceeding might be—we do not say that it was—influenced by a statement that such defendant had threatened to kill the person chiefly concerned in the judicial inquiry wherein the alleged perjury was committed. In other words, if the jury believed that one would threaten to kill another, they, also, might believe that he would bear false witness against him.

The court, or any other human agency, is wholly incompetent to say for a certainty whether such remarks affected in any way the scales of justice. In view of the fact that the penalty for perjury, in addition to actual confinement, includes, as well, the further penalty of never again being permitted to testify, we feel that we should resolve this uncertainty in favor of the defendant and permit him to have his guilt or innocence determined by a jury upon whose ears no improper remarks have fallen. In so doing, we may be uselessly consuming the time of the court and parties, but we feel that it is better to do so than to attach the stigma of a perjurer to the defendant when such a doubt, impossible of clarification, exists. We are certain the district attorney would not want such stigma to attach to the defendant by reason of any ill-considered remark of his—in fact, it was the district attorney himself who specially requested us to direct the jury to disregard the statements in ques-

tion. The only certain way, therefore, to insure exact justice to the defendant is to permit him again to appear before a jury of his peers.

And now, August 28, 1930, a new trial is granted.

From S. D. Gettig, Bellefonte, Pa.